397 So.2d 1005 (1981)
Howard Dwight DAVIS, Appellant,
v.
STATE of Florida, Appellee.
No. UU-332.
District Court of Appeal of Florida, First District.
May 5, 1981.
John D. O'Brien, Panama City, for appellant.
Wallace E. Allbritton, Asst. Atty. Gen., Tallahassee, for appellee.
THOMPSON, Judge.
The appellant was charged with and convicted for second degree murder. On appeal, he argues that the trial court erred in giving its reinstruction to the jury on the elements of second degree murder. We agree and reverse.
The trial court initially gave the following Standard Jury Instruction ("SJI"):
Murder in the second degree is the killing of a human being by the perpetration of *1006 an act imminently dangerous to another and evincing a depraved mind regardless of human life, although without a premeditated design to effect the death of any particular individual.
An act is one imminently dangerous to another and evincing a depraved mind regardless of human life, if it is an act (or a series of acts) which:
1. A person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another;
2. Is done from ill will or hatred, spite or an evil intent, and

3. Is of such a nature that the act itself indicates an indifference to human life. [emphasis supplied]
Two hours and twenty minutes after the jury retired, the jury returned to the courtroom, and the following exchange took place:
THE COURT: All right, Mr. Foreman, you have a question?
FOREMAN OF JURY: Yes, sir.
THE COURT: Is it a question of law or a question of fact? Does it have to do with the law or does it have to do with the testimony?
FOREMAN OF THE JURY: The law.
THE COURT: And you can't resolve it out of those written instructions?
JUROR: We are having great difficulty.
THE COURT: All right, what is it? What is the question?
FOREMAN OF THE JURY: As we were going through these we ran across this question ... in this statement:
"An act is one imminently dangerous to another and evincing a depraved mind regardless of human life if it is an act or a series of acts which:
1. a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another,
2. is done from ill will, hatred, spite or an evil intent, and
3. is of such a nature that the act itself indicates an indifference to human life."
THE COURT: And/or. And/or. Is that your problem, three?
FOREMAN OF THE JURY: Yes, sir.
THE COURT: And/or. Either one of those.
JURY: Yes, sir.
After this exchange, the jury retired to the juryroom and then defense counsel immediately objected, stating that: "It takes all three of those elements to make a crime. You've got to take all three of those elements." Defense counsel also pointed out that the court's reinstruction was confusing and an incorrect statement of the law. These objections were "sufficiently specific both to apprise the trial judge of the putative error and to preserve the issue for intelligent review on appeal." Castor v. State, 365 So.2d 701, 703 (Fla. 1978). The trial court noted these objections and overruled them, and forty-five minutes after the trial court's reinstruction was given, the jury returned with its verdict, finding that the appellant was guilty of second degree murder.
The appellant properly contends that the trial court erroneously instructed the jury that the elements which define the term "imminently dangerous and evincing a depraved mind regardless of human life" are disjunctive rather than conjunctive. The State mistakenly argues that this contention is invalid in light of State v. Bryan, 287 So.2d 73 (Fla. 1973). The court in Bryan simply noted that a trial court may charge the jury by reading the second degree murder statute. Id. at 74, 76. While the court did state that "the average juror pretty well understands what a depraved mind is," the court also observed the SJI's elaboration on second degree murder "would have been appropriate and even wise to add to the [statutory] charge below." Id. at 76 (footnote omitted). Also, it is clear that once the SJI is given, it must be given properly on a reinstruction. Such was not done here.
The trial court used the disjunctive "and/or" instead of the conjunctive "and." The court compounded this error by essentially telling the jury that as for the last two elements listed in the SJI, "either one *1007 of those" would be sufficient to find the appellant guilty of second degree murder. These reinstructions were contrary to the court's initial use of the SJI, which explicitly contains the word "and." Moreover, the SJI's use of the conjunctive "and" is legally correct. Section 782.04(2), Fla. Stat. (1979), provides that second degree murder is "[t]he unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual... ." The SJI repeats this language, and then directs attention to the statutory phrase "any act imminently dangerous to another and evincing a depraved mind regardless of human life... ." The SJI explicates this language as follows: "any act imminently dangerous to another" is defined in the SJI as element # 1 (an act which "a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another"); "any act ... evincing a depraved mind" is defined in the SJI as element # 2 (an act which "is done from ill will or hatred, spite or an evil intent");[*] and "any act ... regardless of human life" is defined in the SJI as element # 3 (an act which "is of such a nature that the act itself indicates an indifference to human life.")
In this instance, reversal is necessary because the law regarding second degree murder was not correctly presented to the jury by the trial court's reinstruction, and the defendant was clearly prejudiced by that erroneous reinstruction. These factors are emphasized by the recognition that "while supplemental instructions must be considered as a whole and must be viewed in the light of other instructions already given, they cannot reasonably be considered as other language in the basic charge, since the jury will rely more heavily on such instructions than on any single portion of the original charge." Henry v. State, 359 So.2d 864, 868 n. 3 (Fla. 1978). See also Diecidue v. State, 131 So.2d 7, 11 (Fla. 1961).
The appellant has raised numerous other points on appeal, but only two of those points merit discussion herein. At trial, the appellant testified in his own behalf, and on cross-examination, a prosecutor asked the following question: "Have you ever been convicted of a crime punishable by death or in excess of a year under the law in which you were convicted?" Defense counsel objected, stating that the question was improper; the trial court overruled the objection; and the appellant answered the question affirmatively.
It is obvious that the prosecutor was tracking the language of § 90.610(1), Fla. Stat. (1979), which provides that "[a] party may attack the credibility of any witness, including an accused, by evidence that the witness has been convicted of a crime if the crime was punishable by death or imprisonment in excess of 1 year under the law under which he was convicted... ." (emphasis supplied). However, we express our concern regarding the prosecution's actual use of the statutory language, as well as the manner in which that language was used. As for the latter concern, the statute refers to a conviction for a crime punishable by death or imprisonment in excess of one year. Thus, there are two separate elements referred to in the statute, and if the statute is to be used by the prosecution, each element should comprise the basis for one question. If the two statutory elements are asked as one question, an affirmative answer could easily create an inference in the minds of jurors that a defendant had been previously convicted of a capital crime when in fact, he may have been convicted of only a minor felony. This is particularly true if a defendant is being prosecuted for murder (as in this case). Thus, if a defendant answers affirmatively to the single question as to whether he has been convicted of a crime punishable by death or by imprisonment in excess of one year, the prosecution has invited, if not required, him to volunteer the nature of his crime if it *1008 was a minor felony. As pointed out in Goodman v. State, 336 So.2d 1264, 1266 (Fla. 4th DCA 1976), cert. den., 342 So.2d 1103 (Fla. 1977), "[t]he defendant who admits a conviction is not to be prevented from voluntarily revealing the nature of the crime for which he was convicted, but the prosecution must not invite him to volunteer." (emphasis supplied).
Even the bifurcated use of the statutory language still presents a problem. If the defendant answers affirmatively when asked if he has been convicted of a crime punishable by death, he has virtually been required to expose the exact nature of the crime because there are so few crimes punishable by death. For impeachment purposes, it is not necessary or proper that the jury have this detailed information.
Insofar as § 90.610(1), Fla. Stat., refers to a conviction for a crime punishable by death or imprisonment in excess of one year, we note that these two statutory elements simply comprise the standard definition of a felony. Given this fact, we think that it is preferable, for purposes of impeachment, to simply ask a defendant if he has been convicted of a felony. This single inquiry would encompass the statutory elements referred to above and it would eliminate any prejudice to the defendant resulting from other methods of inquiry.
The other point raised by the appellant concerns the impropriety of certain prosecutorial comments. For example, during closing argument to the jury, Sister Blackmon, an assistant state attorney, made the following statements:
Ladies and Gentlemen, that is why David Cronin is dead, because he didn't shut up, because of the attitude of this man [i.e., the appellant.] This man has already been convicted of two crimes, already. He hasn't lived, at least we know twice, he hasn't lived by the rules of society and the law of this State.
[Defense counsel objects to this argument]
Ladies and Gentlemen, you well know he hadn't conformed twice in the past and he wasn't conforming that night. He wasn't conforming like the law said he had to conform.
[Defense counsel objects to this argument]
He was not conforming. Ladies and Gentlemen, has our society gotten to the point where people are saying, "Okay, the man has a right to do anything he wants to do," and as long as he can say, "Whoop, that intent is not in my mind;" that he can get away from it?
Has it gotten to the point where everybody who is convicted of a crime merely can do an act ... everybody, from all the circumstances ... puts a label on it, murder ... and he can say, "Oh, I didn't have that mental intent."
We take this opportunity to voice our disapproval of the assistant state attorney's comments, which refer to the appellant's previous convictions, not for the sake of attacking his credibility, see Wilkins v. State, 383 So.2d 742, 743 (Fla. 4th DCA 1980), but for the sake of indicating that he has a propensity to commit crime. This court, in Cochran v. State, 280 So.2d 42, 43 (Fla. 1st DCA 1973), observed that
[i]t is the duty of a prosecuting attorney in a trial to refrain from making improper remarks or committing acts which would or might tend to affect the fairness and impartiality to which the accused is entitled. [Her] duty is not to obtain convictions but to seek justice, and [s]he must exercise that responsibility with the circumspection and dignity the occasion calls for. Cases brought on behalf of the State of Florida should be conducted with a dignity worthy of the client.
These observations are especially appropriate in this case, which is reversed and remanded for a new trial.
BOOTH and SMITH, JJ., concur.
NOTES
[*] See Manuel v. State, 344 So.2d 1317, 1319 (Fla. 2d DCA 1977), cert. dism., 355 So.2d 515 (Fla. 1978); Hines v. State, 227 So.2d 334, 335-36 (Fla. 1st DCA 1969).