642 So.2d 1178 (1994)
Joseph PACIFICO, Appellant,
v.
STATE of Florida, Appellee.
No. 93-728.
District Court of Appeal of Florida, First District.
September 29, 1994.
*1180 Victor L. Chapman and Antoinette Dipalma, Barrett & Chapman, P.A., Orlando, for appellant.
Robert A. Butterworth, Atty. Gen., and Joseph S. Garwood and Thomas Falkinburg, Asst. Attys. Gen., Dept. of Legal Affairs, Tallahassee, for appellee.
PER CURIAM.
Appellant, Joseph Pacifico, appeals his conviction and sentence, after a jury found him guilty of sexual battery with physical force not likely to cause serious personal injury, and not guilty of kidnapping. The issues on appeal are: (1) whether the cumulative effect of prosecutorial misconduct deprived appellant of a fair trial; (2) whether the trial court erred in excluding testimony as to the victim's state of mind at the time of the incident; and (3) whether the trial court erred in admitting testimony regarding the victim's statements to her roommates under the "first complaint" exception to the hearsay rule. We reverse and remand for a new trial.
When the events giving rise to these charges occurred, the victim was an eighteen-year-old freshman at Florida State University (F.S.U.). She shared a two-bedroom apartment with three other young women, who were students at Tallahassee Community College. Appellant, a Tampa resident, moved to Tallahassee ostensibly planning to attend F.S.U. He shared a three-bedroom, two-bath house with two other young men, both of whom were F.S.U. students and members of Sigma Pi fraternity. Appellant was then twenty-five years of age; he told his housemates that he was twenty-one, and that he was an F.S.U. student. Appellant never applied for admission to the university; it appears he claimed to be an F.S.U. student so he could join Sigma Pi fraternity.
At the trial of this cause, the prosecutor began her opening statement in the following manner:
This case is about an older slick fraternity guy who targeted a naive freshman girl, tricked her into coming to his house and then by physical force, insults and threats confined her there and forced her to have sexual intercourse against her will, leaving her with injuries to her sex organs described by the emergency room physician as more severe than those he had seen in most sexual battery cases.[1]
The facts relevant to the issues on appeal, as reflected by the trial testimony, establish that on the evening of January 14, 1992, the victim and a friend who dated a Sigma Pi fraternity member, attended a Sigma Pi rush party. The two women arrived at the fraternity party at 11:00 p.m., with plans to attend an "after" party at the off-campus residence of one of the fraternity members.
The victim and her fellow student were both acquainted with appellant through mutual friends who were Sigma Pi fraternity members. At the party, the victim encountered appellant. Subsequently, the victim agreed to ride to the "after" party with appellant, who said he knew where the party was being held. After driving for a while, appellant told the victim he was lost. With the victim's acquiescence, appellant stopped and bought beer. Appellant then suggested that they stop at his house so he could show the victim some pamphlets on spring break week, an event she had been invited to attend. When they arrived, the house was dark. The victim followed appellant to his room, where he changed into boxer shorts and a T-shirt.
*1181 According to appellant's account of events, the victim wanted to change into a T-shirt, which he provided to her, and then she voluntarily engaged in sexual intercourse with him. The victim testified that appellant wrestled with her, removed her clothes by force, and told her it would not matter if she screamed, because his roommates would think that he was having a good time. After the sexual intercourse, the victim dressed and appellant drove her to her apartment.
The trial court denied a defense motion to prevent the victim's roommates from relating the statements made to them by the victim upon her return to the apartment after the sexual encounter. One of the victim's roommates testified that at 3:00 a.m. of the night in question, she responded to the victim's knock at the apartment door, and immediately asked the victim what was wrong. The roommate further testified that the victim's hair was matted, her head was down, she was shaking as though she had been crying but did not want her roommates to know, her mascara had run down her face, and she was an emotional wreck. The victim told her roommates that nothing had happened, and she just wanted to go to bed.
When the victim and her roommate were in their bedroom, the roommate again asked what had happened, whereupon the victim stated over and over, "he hurt me." When her roommate asked what he did, the victim stated, "he raped me." At that point, the roommate called to the other woman, who rushed into the bedroom. The victim's roommates testified that the victim was "crying hysterically," "in a fetal position," and was "crying and gasping for air." After attempting to comfort the victim, her roommates drove her to the hospital. On the drive to the hospital, the victim sat in the car in a dazed state, shaking and crying.
Dr. Alexander, the examining emergency room physician, stated the victim told him she knew appellant, and she went to his house voluntarily. The victim told Dr. Alexander that she was in a bedroom in the house, and that appellant grabbed her, threw her on a bed, and was verbally and physically insistent that she have sex with him. The victim said she resisted, by biting and striking appellant, but he undressed her by force and forced her to have intercourse with him. The medical examination revealed early bruises on the victim's right thigh and left leg, swelling of the area around the vagina, and swelling of the opening of the vagina. The doctor said the findings were consistent with the details of forced sexual intercourse related by the victim. The doctor also stated that he thought the degree of swelling was more severe in this instance than in the majority of sexual assault patients he had examined.
During closing arguments, the prosecutor's remarks elicited several objections, two motions for mistrial, and occasional admonishments by the trial court. The prosecutor began her closing argument thusly:
Ladies and gentlemen of the jury, this case is about a chronic liar, a convicted felon,[2] a sadistic selfish bully who lied his way into a fraternity because he liked the social opportunities and the life style that it offered him. He targeted a naive trusting freshman girl. He tricked her into coming to his apartment by manipulation and ruse.
Continuing in this vein, the prosecutor advised the jurors that "[t]his defendant is a criminal, and he needs to be convicted." Noting that appellant's girlfriend was in the courtroom, the prosecutor said,
Sex is available to him, ... but rape is not about sex. It is not an act of love or affection or intimacy. It is an act of violence and power, domination and control. You can't get that with your girlfriend.
We find all the time that rapists have girlfriends.
After being admonished by the trial court, the prosecutor continued along the same line, stating:

*1182 Rapists get their kicks off dominating, off terrorizing, off of demeaning another person. He can't do that with a relationship with a girlfriend.
.....
People are raped in their homes all the time. They're raped in shopping malls. They're raped in cars. They're raped walking down the streets. They're raped in alleyways.
.....
You cannot unrape ____ ____. You cannot unkidnap her.
After an objection by defense counsel, and an admonishment by the trial court, the prosecutor again stated:
There she [the victim] sits. She was raped. You cannot unrape her. She was kidnapped. She was confined. She was abducted.
Defense counsel again objected, argued that the prosecutor was invoking the golden rule, and moved for a mistrial on the basis of cumulative error throughout the trial. The trial court denied the motion, but again directed the prosecutor to limit her argument to comments upon the evidence. When the motion for mistrial was denied, defense counsel requested a curative instruction. Concluding that a curative instruction would be misunderstood by the jury, the trial court refused the requested instruction, and also denied the renewed request for a mistrial.
With reference to the credibility of the witnesses, the prosecutor stated that appellant 
... is a convicted felon. He is a chronic liar. He told about lying to get into the fraternity. He wasn't really a student. He lied about his age. His roommates said he lied.
In her rebuttal, the prosecutor again referred to appellant as a liar, stating, "He lied and he lied and he lied." After a characterization of appellant as "sadistic," and a defense objection which was overruled, the prosecutor stated:
Now, does he walk out of this courtroom today laughing, or do you make him take responsibility for what he did to ____ ____ that night?
The jury found appellant guilty as charged of the offense of sexual battery, and not guilty of the offense of kidnapping. The trial court sentenced appellant in accordance with the minimum recommended guidelines sentencing range, to a term of five and one-half years of incarceration.
The first issue concerns various instances of improper prosecutorial comment. It is well settled that control of the prosecutor's comments to the jury is a matter of trial court discretion, and the exercise of that discretion will not be disturbed absent a clear showing of abuse. Crump v. State, 622 So.2d 963, 972 (Fla. 1993). A failure to object to improper prosecutorial comment will preclude review, unless the comments were so prejudicial as to constitute fundamental error. Street v. State, 636 So.2d 1297 (Fla. 1994); Craig v. State, 510 So.2d 857, 864 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 732, 98 L.Ed.2d 680 (1988); Fuller v. State, 540 So.2d 182, 184 (Fla. 5th DCA 1989).
In the instant case, appellant challenges five specific areas of improper prosecutorial comment, contending that the cumulative effect of the improprieties constituted fundamental error. We agree. The first such instance concerns the prosecutor's "free man" comment. It is improper for a prosecutor to tell or to infer to jurors that it is their duty to convict the accused for the good of society. See Alvarez v. State, 574 So.2d 1119, 1120-1121 (Fla. 3d DCA 1991); Gomez v. State, 415 So.2d 822, 823 (Fla. 3d DCA 1982).
Here, the prosecutor commented: "If the defendant walks out of here a free man today, that's your decision," and, "Now, does he walk out of this courtroom today laughing, or do you make him take responsibility for what he did to ____ ____ that night?" In isolation, the former comment could be considered a reference to the jurors' duty to decide appellant's guilt or innocence. However, when this comment is considered together with the latter comment, it appears to constitute an implicit instruction to the jurors that it was their duty to society to return a verdict of *1183 guilty, a practice deemed to be reversible error. See Alvarez and Gomez.
The second area of prosecutorial impropriety concerns the use of pejorative terms to characterize the defendant. It is improper for a prosecutor to refer to the accused in derogatory terms, in such manner as to place the character of the accused in issue. See Lewis v. State, 377 So.2d 640 (Fla. 1979); Donaldson v. State, 369 So.2d 691 (Fla. 1st DCA 1979). Despite the impropriety of such references, prosecutorial "name-calling" will result in reversal only if the vituperative comments become such a feature of the trial that the accused's right to a fair trial is prejudiced. Reaves v. State, 639 So.2d 1 (Fla. 1994).
Here, the prosecutor referred to appellant as a "slick fraternity guy" during her opening remarks to the jury. If there had been no other instance of improper comment, this characterization could be viewed as a statement of the evidence which the state expected to develop at trial. No objection was raised, and the comment by itself was not so inflammatory or prejudicial as to compromise the fairness of the trial. The same cannot be said with regard to the prosecutor's references to appellant as a "sadistic, selfish bully," a "criminal," a "convicted felon," a "rapist," and a "chronic liar." These remarks fall into the realm of character attacks. Although appellant admitted he lied about his age, his status as an F.S.U. student, and his membership in Sigma Pi fraternity, these statements were made with regard to his desire to belong to a fraternity. They did not demonstrate the long duration of untruthful conduct necessary to justify characterizing appellant as a "chronic" liar. Similarly, the repeated references to appellant as a criminal and a convicted felon, while technically correct, were unwarranted in light of the limited nature of appellant's prior record. Taken as a whole, the prosecutor's comments were inflammatory and prejudicial, and became such a feature of the trial that they must be considered fundamental error. See Reaves.
In a similar vein, a prosecutor may use a defendant's prior conviction as an impeachment tool, but it is improper to refer to the defendant's previous convictions for the purpose of indicating that he or she has a propensity to commit crime. Davis v. State, 397 So.2d 1005, 1008 (Fla. 1st DCA 1981). The prosecutor in this case argued to the jurors: "This defendant is a criminal, and he needs to be convicted." The defense objection to this comment was sustained, yet the prosecutor continued to argue in the same manner. After further defense objections, and a motion for mistrial and a request for a curative instruction were denied, the prosecutor repeated the impropriety with another reference to appellant as a convicted felon. We reject the state's contention that these comments should be viewed as a proper attack upon appellant's credibility. There was no suggestion at trial that appellant was untruthful with regard to any matter unrelated to his effort to be accepted by the fraternity. When these comments are considered in context with the prosecutor's comments that appellant "is a criminal and needs to be convicted," they suggest that appellant has a propensity to commit crime. As such, the comments fall within the proscription articulated in Davis.
The fourth area of improper prosecutorial comment concerns the many references to appellant as a "liar." Exhorting the jury to convict the accused because he lied constitutes 
an open invitation to the jury to convict the defendant for a reason other than his guilt of the crimes charged. Such comments have been held to constitute reversible error in a long line of cases.
Bass v. State, 547 So.2d 680, 682 (Fla. 1st DCA), review denied, 553 So.2d 1166 (Fla. 1989) (citation omitted). In Bass, this court reversed, concluding the prosecutor's remarks could have been and likely were construed as asking jurors to send a message about lying in the courtroom, rather than focusing their attention on whether the state proved Bass's guilt.
Likewise, it is improper for a prosecutor to express a personal belief in the guilt of the accused, or in the veracity of the *1184 state's witnesses. Jones v. State, 449 So.2d 313, 314 (Fla. 5th DCA), review denied, 456 So.2d 1182 (Fla. 1984). Where the case against a defendant is weak or tenuous, a prosecutor's contentions that the defendant is a liar could rarely, if ever, be construed as harmless error. Jones, 449 So.2d at 314-315. It is permissible for a prosecutor to refer to a witness as a liar only if the context of the statement indicates that "the charge is made with reference to testimony given by the person thus characterized, [and] the prosecutor is merely submitting to the jury a conclusion that he is arguing can be drawn from the evidence." Craig, 510 So.2d at 865.
In this case, the prosecutor's references to appellant as a liar occurred throughout the trial and again in closing argument. In other circumstances, perhaps the many references to appellant as a liar would not be sufficiently egregious to cast doubt upon the fairness of the trial. Unfortunately, the "liar" references in this case occurred in conjunction with other improper prosecutorial comments, to such an extent that it is questionable whether the jury could put aside the prosecutor's character attacks, and decide the case based strictly upon the evidence.
The fifth area of impropriety concerns the prosecutor's references to matters not in evidence, and to her personal beliefs about the evidence. It is impermissible for a prosecutor to comment in closing argument upon matters outside the record. Wheeler v. State, 425 So.2d 109, 110-111 (Fla. 1st DCA 1982), approved, State v. Wheeler, 468 So.2d 978 (Fla. 1985). By the same token, because a jury can be expected to attach considerable significance to a prosecutor's expressions of personal beliefs, it is inappropriate for a prosecutor to express his or her personal belief about any matter in issue. Singletary v. State, 483 So.2d 8, 10 (Fla. 2d DCA 1985). Accord Bass, 547 So.2d at 682.
Here, the prosecutor told the jurors that rapists always have girlfriends; that rapists "get their kicks" by dominating, demeaning, and terrorizing their victims; and people are raped all the time in their homes, in shopping malls, and in cars. The comments were inflammatory, in that they suggested to the jurors that society generally is threatened by the pervasive presence of rapists. Since no evidence was offered to support such assertions, the argument suggested the prosecutor had special information and could instruct the jurors on the subject. These comments were improper and prejudicial, in that they did not relate to any evidence submitted at trial, and had no bearing on the issues to be decided by the jury.
Automatic reversal of a conviction on the basis of prosecutorial error is not warranted, unless the errors are so basic to a fair trial that they can never be considered harmless. The standard of review is whether "the error committed was so prejudicial as to vitiate the entire trial." State v. Murray, 443 So.2d 955, 956 (Fla. 1984). Inappropriate prosecutorial comment did not require reversal in Murray, because the evidence of guilt was overwhelming, and the trial court admonished the prosecutor after an objection. 443 So.2d at 957. Reversible error was found in Bass, where the trial of the case involved a two-witness swearing match, with little or nothing to corroborate the testimony of either witness. Obviously, in situations of this nature, where witness credibility is the pivotal issue, inappropriate prosecutorial comment which might be considered harmless in another context, can become prejudicially harmful. See Hill v. State, 477 So.2d 553 (Fla. 1985); Bass, 547 So.2d at 682. The failure to object to improper prosecutorial comments will not preclude reversal where the comments are so prejudicial to the defendant that neither rebuke nor retraction would destroy their influence in attaining a fair trial. Wilson v. State, 294 So.2d 327, 328-329 (Fla. 1974).[3]
Here, the case primarily involved the conflict in testimony between the victim and appellant with respect to the victim's consent to sexual intercourse. Thus, the pivotal issue was the jurors' perception of appellant's credibility. The cornerstone of our system of justice is the right of an accused to be judged *1185 fairly by a jury of his or her peers. On the basis of the record before us, we conclude the repetitious and egregious nature of the prosecutorial improprieties in this case became such a feature of the trial as to deprive appellant of that fundamental right. Due to the prejudicial nature of cumulative prosecutorial impropriety, we must reverse the conviction, and remand for a new trial.
For purposes of retrial, we address the other two issues raised. The second issue concerns the exclusion of appellant's testimony with regard to the victim's statements at the time of the incident. Appellant sought admission of these statements under the "then existing state of mind" exception to the hearsay rule. The relevant portion of section 90.803(3), Florida Statutes, provides:
The provision of s. 90.802 to the contrary notwithstanding, the following are not inadmissible as evidence, even though the declarant is available as a witness:
.....
(3) Then existing mental, emotional, or physical condition. 
(a) A statement of the declarant's then existing state of mind, emotion, or physical sensation, including a statement of intent, plan, motive, design, mental feeling, pain, or bodily health, when such evidence is offered to:
1. Prove the declarant's state of mind, emotion, or physical sensation at that time or at any other time when such state is an issue in the action.
2. Prove or explain acts of subsequent conduct of the declarant.
(b) However, this subsection does not make admissible:
.....
2. A statement made under circumstances that indicate its lack of trustworthiness.
This state of mind exception admits qualifying extrajudicial statements only if the declarant's state of mind is at issue. Kelley v. State, 543 So.2d 286, 288 (Fla. 1st DCA 1989). See also Bedford v. State, 589 So.2d 245 (Fla. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1773, 118 L.Ed.2d 432 (1992) (testimony of victim's sister that victim said she had a yeast infection and was abstaining from sex for a week or two prior to her murder properly admitted under section 90.803(3), Florida Statutes, to prove victim's state of mind and her conduct with respect to intercourse prior to her murder); Peede v. State, 474 So.2d 808 (Fla. 1985), cert. denied, 477 U.S. 909, 106 S.Ct. 3286, 91 L.Ed.2d 575 (1986) (victim's statements to her daughter just prior to her disappearance properly admitted, because statements served to demonstrate that victim would not have been inclined to accompany the defendant voluntarily).
As a general rule, an appellate court will not review the propriety of a ruling excluding evidence, unless a proffer is made to establish what was expected to be elicited if the witness had been permitted to testify. Lucas v. State, 568 So.2d 18, 22 (Fla. 1990); Salamy v. State, 509 So.2d 1201, 1204 (Fla. 1st DCA 1987). An exception to the rule is provided by section 90.104(1)(b), which states:
(1) A court may predicate error, set aside or reverse a judgment, or grant a new trial on the basis of admitted or excluded evidence when a substantial right of the party is adversely affected and:
.....
(b) When the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer of proof or was apparent from the context within which the questions were asked.
See also O'Shea v. O'Shea, 585 So.2d 405, 407 (Fla. 1st DCA 1991).
In this case, the defense sought admission of the victim's statements made to appellant just prior to and during the incident at issue, to demonstrate that the sexual intercourse was consensual. Since the victim's lack of consent is an element to be proved in a prosecution for sexual battery, the question of the victim's consent is at issue in this cause. Although a proffer was not made, we conclude the substance of the statements sought to be admitted was apparent from the context of the questions posed to appellant by his trial counsel.
*1186 Since the victim's consent was the central issue, the exclusion of this evidence adversely affected appellant's right to present evidence supporting his theory of defense. The prejudicial effect was exacerbated by the victim's detailed testimony regarding the forcible nature of the sexual intercourse. During the course of her testimony, the victim was afforded an opportunity to explain and to refute the testimony of appellant's housemates concerning seemingly normal, albeit muffled, conversation between a male and a female, and the feminine giggle, that they heard coming from appellant's room. The victim testified she did not attempt to attract the attention of the other occupants of the house, because she feared she might be the victim of a gang rape by appellant's housemates. The victim admitted to the giggle, but described it as a "nervous" giggle. Upon retrial, appellant should be permitted to testify as to the victim's statements immediately prior to, and at the time of, the sexual encounter. Such statements are relevant to, and are admissible as, evidence of the victim's then existing state of mind regarding the question of her consent.
The third issue concerns the admission into evidence of the victim's statements through her roommates' testimony, under a "first complaint" theory, or under the spontaneous statement or excited utterance exception to the hearsay rule. To be admissible as a "spontaneous statement,"[4] the statement must be made while the declarant is perceiving the event or immediately after the event. For a statement to be admissible as an "excited utterance,"[5] the following elements must exist:
(1) there must be an event startling enough to cause nervous excitement; (2) the statement must have been made before there was time to contrive or misrepresent; and (3) the statement must be made while the person is under the stress of excitement caused by the event.
State v. Jano, 524 So.2d 660, 661 (Fla. 1988); Turtle v. State, 600 So.2d 1214, 1218 (Fla. 1st DCA 1992). The duration of time between the event and the statement is an important consideration in determining admissibility of excited utterances. Jano, 524 So.2d at 662. "The utterance must have been made before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance, and the utterance must relate to the circumstances of the occurrence preceding it." Lyles v. State, 412 So.2d 458, 460 (Fla. 2d DCA 1982).
The record in this case reflects that immediately after the sexual encounter, appellant drove the victim home, arriving at her apartment at 3:00 a.m. Although the record does not establish the actual time required to drive from appellant's house to the victim's apartment, the evidence at trial would support a reasonable inference that the interval was relatively short.[6] The facts adduced at trial indicate the victim made the statements to her roommates at her first opportunity to complain to anyone other than appellant after the sexual encounter. As such, the victim's statements to her roommates were admissible under the "first complaint" exception to the hearsay rule. McDonald v. State, 578 So.2d 371 (Fla. 1st DCA), review denied, 587 So.2d 1328 (Fla. 1991). In view of our *1187 holding in this regard, we need not rule upon the admissibility of the statements under the spontaneous statement or excited utterance exception to the hearsay rule. Nevertheless, for purposes of retrial, the record before us suggests that the time lapse between the sexual encounter and the victim's statements to her roommates was sufficient to permit reflective thought. If, indeed, that was the case, the statements would not be admissible either as spontaneous statements or as excited utterances.
Accordingly, this cause is reversed and remanded for a new trial. Upon retrial, we caution the trial court and the prosecutor to be mindful of the proper bounds of closing argument. Appellant should be permitted to introduce evidence as to the victim's then existing state of mind, and the state again should be permitted to introduce the victim's statements with regard to the sexual encounter under a "first complaint" theory.
ERVIN, JOANOS and KAHN, JJ., concur.
NOTES
[1] No objection was raised to any comment during the opening statements.
[2] During his testimony, appellant admitted he had one prior felony conviction. He pled nolo contendere to a grand theft charge, for which he was placed on probation. Appellant said he entered the plea because he was due to move out of the state, making him unable to participate in the recommended pretrial intervention program in which adjudication of guilt would have been withheld.
[3] In this vein, we recognize that it is impractical for an attorney to interject constant objections to repeated improprieties by opposing counsel. See Wilson v. State, 294 So.2d 327, 329 (Fla. 1974).
[4] Section 90.803(1), Florida Statutes, defines a spontaneous statement as:

A spontaneous statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter, except when such statement is made under circumstances that indicate its lack of trustworthiness.
[5] Section 90.803(2), Florida Statutes, defines an excited utterance as:

A statement or excited utterance relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
[6] Our review of the evidence indicates that the victim and appellant left the party at the Sigma Pi fraternity house at approximately 1:00 a.m. Appellant drove for a while, announced that he was lost, stopped to buy beer, then drove to his house. The victim and appellant went to appellant's room, looked at spring break pamphlets, undressed, engaged in sexual intercourse, redressed, and arrived at the victim's apartment at 3:00 a.m. This evidence suggests a short time period between the event and the victim's statements to her roommates.