PATTERSON, Judge.
Shawn McLellan appeals from his convictions of lewd, lascivious, or indecent assault or act upon a child under sixteen and handling or fondling a child in a lewd, lascivious, or indecent manner. We reverse.
The victim of the charged crimes was Stacey, who was born February 13, 1982. Stacey’s mother, Rhonda, was engaged to McLellan at the time of the incidents, which occurred around January and August of 1995. Rhonda and McLellan did not live together.
Stacey testified that in January 1995, while she was lying on her bed, McLellan came in and penetrated her with his finger. She admitted that on the night in question a friend had put LSD in her drink while they were out and that she “tripped out” later in the evening, having hallucinations. In regard to the August 1995 incident, Stacey testified that while she was sitting on her mother’s car, McLellan tried to kiss her and touch her legs and breasts. It was only after this second incident that she called the abuse registry hotline.
Rhonda testified that Stacey: had severe emotional problems before she met McLel-lan; had been in counseling and had alleged that she was molested in the past; used alcohol and had taken LSD, speed, smoked marijuana, and snorted Ritalin; had attempted suicide several times; suffered from anorexia; had been hospitalized in the past due to psychiatric illness; refused to follow house rales; and was taken out of school due to her behavior.
Rhonda went on to testify that Stacey displayed a dislike for McLellan and, on several occasions, had exposed her body to her and McLellan and anyone else who happened to be present. Further, Stacey was opposed to her mother’s relationship with McLellan and, when she learned that Rhonda was going to marry McLellan, she attempted to overdose. Rhonda testified that Stacey had a reputation in the community for being untruthful and had a history of making up lies that would sound believable to those who did not know her.
Stacey admitted to having trouble in school, excessive use of drags and alcohol, having severe depression, and attempting to kill herself. She denied exposing her body. She testified that she had molested her brother by touching his genitalia; however, she told the HRS worker who was investigating that incident in February 1995 that she herself had not been molested. Dr. Catherine Keely, a pediatrician who examined Stacey after the August report of abuse, testified that she found no visual proof of digital penetration or sexual abuse.
McLellan did not testify. He had, however, given a basically-exculpatory statement to the police on August 9, 1995, and that statement was admitted into evidence. The statement denied any wrongdoing and confirmed that the incidents occurred, but not in the manner that Stacey alleged. McLellan said *930 that, essentially, Stacey had initiated sexual contact by grabbing his hand and putting his finger inside her. He explained that he had been sitting on the edge of her bed watching television, while at her request, she gave him a manicure. She was holding his hand behind him when he felt something wet, saw what she had done, and pulled his hand away. He said that Stacey just smiled and laughed.
McLellan raises several issues on appeal. We find merit in only one, which relates to the prosecutor’s comments in closing argument. The state had called Dr. Keely, the pediatrician who had examined Stacey. Dr. Keely testified that Stacey had said, “I was molested by blank.[1] He penetrated me with his finger; I remember bleeding that night.” Dr. Keely went on to state that an incident of that nature could result in a tear in the hymen, a laceration of the vagina, and scarring. She stated that the exam revealed no findings whatsoever. Considering that the exam was eight months after the alleged incident, it was common to observe no findings.
Thus, with respect to the penetration incident, the prosecutor had the testimony of Stacey, a witness of tarnished credibility, corroborated by the history she gave to Dr. Keely, and nothing else. In closing, directing his attention to the medical history, the prosecutor said, “Dr. Keely took a statement from the child as part of her medical treatment. She told you, and I would think common sense should also tell you, that when somebody goes to a doctor they’re honest.” The problem here is twofold. First, it would have been improper for Dr. Keely to bolster Stacey’s credibility by saying that patients give honest histories to their doctor. This is true even if the witness is an expert. Morgan v. State, 639 So.2d 6 (Fla.1994). It would therefore be improper for the prosecutor to repeat such testimony to the jury. The second, and most damning fact, is that Dr. Keely did not so testify. Nothing she said could be interpreted to have such a meaning. The prosecutor simply invented it. It is improper for the prosecutor to comment on facts outside the evidence. See Pacifico v. State, 642 So.2d 1178, 1184 (Fla. 1st DCA 1994). In this case, the statement is nothing more than the prosecutor, in a roundabout manner, expressing his opinion on Stacey’s credibility, which he clearly cannot do. Id. at 1183-84. Here, when McLel-lan, through his statement to the police, and Stacey had given totally conflicting versions of the events, the state’s case turned on Stacey’s credibility. Under the circumstances, this error, which McLellan properly preserved by objection, cannot be considered harmless.
Reversed and remanded for new trial.
THREADGILL, A.C.J., and FULMER, J., concur.

. Dr. Keely had been instructed not to name the perpetrator, so she substituted "blank” for the name Stacey had told her.