842 So.2d 223 (2003)
Virginia KELLY, Appellant,
v.
STATE of Florida, Appellee.
No. 1D01-3994.
District Court of Appeal of Florida, First District.
April 8, 2003.
*224 Nancy A. Daniels, Public Defender; Gary D. Wimsett, Jr., Assistant Public Defender, Tallahassee, for appellant.
Charlie Crist, Attorney General; Felicia A. Wilcox, Assistant Attorney General, Tallahassee, for appellee.
WOLF, J.
Appellant, Virginia Kelly, challenges her conviction and sentence for second degree murder.[1] Appellant raises four issues on appeal, two of which have merit and require reversal: 1) We determine the trial court abused its discretion when it refused to allow the defense to recross examine a witness who provided critical information for the first time on redirect examination, and 2) we determine the trial court also abused its discretion in denying a mistrial based upon prosecutorial misconduct during closing argument.
*225 Charges were brought against appellant as a result of the shooting death of her husband, Ronald Kelly. The shooting occurred in the party's bedroom. The only other person in the house at the time of the shooting was appellant's son, Levi Brown. On the night of the shooting, Levi Brown could tell his mother was quite angry with Ronald Kelly because he was late coming home. She said she was "going to kill him [Ronald Kelly]," but Levi Brown did not think she actually meant it literally. He saw his mother get a gun and test-fire it outside. Virginia Kelly had been drinking. After firing the test shot, she left to go look for Ronald Kelly. About twenty minutes later, Virginia Kelly returned and began pacing around the apartment. Ronald Kelly came to the apartment in a rage. Levi Brown testified that "[Ronald Kelly] slammed the front door open with like a wham bam and said where the [expletive deleted] is your mother and all this other rude obnoxious stuff." Ronald Kelly took the phone and went outside to make a call. When he came back, he threw the phone down on the couch, went back to the master bedroom, and told Virginia Kelly that she had to leave. Regarding the actual shooting, Levi Brown testified as follows:
At this point [Ronald Kelly] was doing something with his dresser out of the top drawer and my mother was inside the closet and he was doing something in the top drawer and pulled it out and he swiftly, you know, pulled back and was turning toward my mother like he was going to lunge at her, and my mother grabbed the gun off the top of the dresser and shot him twice.
After the first shot, he heard Ronald Kelly say, "I am dead Ginger. It's over. Don't shoot again." Levi Brown testified that his mother shot Ronald Kelly a second time. Brown testified that he never fired the gun.
Virginia Kelly testified in her own defense. She stated that upon finding Ronald Kelly's truck at the "whore motel," she cut two of his passenger-side tires. She knew this would make him very angry. She also admitted test-firing the gun to see if it worked. Like Levi Brown, she testified that Ronald Kelly came home in a rage. He started "pushing and shoving" her around, and he told her that she needed to get out of his apartment. He was rummaging through his dresser drawer, possibly in search of a weapon. When he turned toward her she shot the gun. Contrary to Levi Brown's testimony, Virginia Kelly testified that she fired only once, and that while she was on the phone with the dispatcher, her son went back to the bedroom and she heard a shot being fired. She told her son to leave the scene. At the first trial Mrs. Kelly testified that she had fired the gun both times. She explained this testimony by saying that she "wanted to cover up for [her] son. I didn't want to get him in trouble."
The discrepancy in Mrs. Kelly's testimony and the question of who fired the second shot became a critical issue during the trial.
Officer John Frascello was one of the police officers sent to process the crime scene. On cross examination the officer testified that his report indicated Levi Brown admitted firing the weapon that day.
On redirect the following exchange took place:
Q: "Officer Frascello, let's clarify something: Is there anything in your report that reflects you had a conversation with Levi Brown?"
A: Officer Frascello-"No."
Appellant's attorney attempted to recross Officer Frascello about his prior testimony *226 at deposition and in the first trial concerning his conversations with Levi Brown about firing the gun.[2] The trial court refused to allow recross examination.
The decision to allow recross examination is generally subject to the discretion of the trial court. See Hurst v. State, 825 So.2d 517 (Fla. 4th DCA 2002). However, when new matters are introduced during redirect examination, denying recross effectively denies the opposing party the right to any cross examination on the new matter and, thus, violates the confrontation clause. United States v. Ross, 33 F.3d 1507, 1518 (11th Cir.1994). Officer Frascello's testimony on cross examination concerning the details of his report appears to be consistent with his prior sworn testimony. It was also supportive of and crucial to the defendant's theory of the case. The witness gave testimony on redirect which conflicted with testimony given only moments prior. The trial court acknowledged the conflict, but determined that its resolution was best left to the jury.
Being able to directly confront the officer with his testimony under oath at deposition and at the previous trial was critical impeachment. While there was some evidence of the prior deposition testimony on the record, the officer was not directly confronted with the inconsistency and there was no mention at all of the prior trial testimony. To deny the defendant the opportunity to put these matters before the jury constituted an abuse of discretion. See Simmons v. State, 552 So.2d 268 (Fla. 1st DCA 1989) (holding that failure to allow impeachment on recross constituted reversible error).
The second issue requiring reversal occurred during the prosecutor's closing argument when a number of inflammatory comments were made. The appellant only objected one time. Two of the most egregious comments occurred about the time of the objection:
Now, ladies and gentlemen, Virginia Kelly would like for you to excuse her. She is so desperate to be excused from her criminal behavior that she blamed her own son for murder. She sat on the stand in this courtroom today, said she could look Levi in the eye, but I will guarantee you she couldn't and put that second shot right on him, and I asked her what do you want the State of Florida to do?
Should we arrest Levi Brown? Should we bring him in here in handcuffs and put him next to you? This woman who never did what she should have to protect Levi Brown now wants to sacrifice him so that you will grant her mercy, so that you will absolve her of her crime, of her sin....
. . . .
Try to get you to absolve her of this crime or finally admit that she just doesn't care about Levi Brown because with her words today, ladies and gentlemen, she put murder and responsibility for murder on her teenage son and, ladies and gentlemen, that all by itself ought to convince you that she deserves to be convicted of second degree murder.

(Emphasis added). Appellee argues that the issue concerning closing argument was not preserved for appeal. However, the transcript shows that the defense attempted to object at the point when the most egregious comments were being made, but the trial court would not allow the defense attorney to state the grounds for objection at that time. The first opportunity for defense counsel to state the grounds for his objection was at the end of the state's closing argument. Defense counsel also *227 made a motion for mistrial at that time.[3] Under these circumstances the argument was preserved for appeal.
Rule 4-3.4(e) of the Rules Regulating the Florida Bar, prohibits an attorney from asserting a personal opinion concerning the credibility of a witness. The prosecutor's statement offering a guarantee that the defendant could not look Levi in the eye was the equivalent of the prosecutor guaranteeing that the defendant was lying. Accordingly, it directly violates Rule 4-3.4(e). See Pacifico v. State, 642 So.2d 1178 (Fla. 1st DCA 1994) (finding, "[I]t is improper for a prosecutor to express a personal belief in the guilt of the accused, or in the veracity of the state's witness.").
Perhaps more importantly, a very large portion of the prosecutor's closing remarks appear to be calculated to generate hatred and ill will towards the defendant as a result of her saying that her son fired the second shot. For example, the prosecutor further stated,
[you heard the defendant] finally admit that she doesn't care about Levi Brown because with her words today, ladies and gentlemen, she put murder and responsibility for murder on her teenage son and, ladies and gentlemen, that all by itself ought to convince you that she deserves to be convicted of second degree murder.
(Emphasis added). The emphasized portion of the quoted comment is an express suggestion that the jury should convict the defendant because of her bad character. "It is improper for a prosecutor to refer to the accused in derogatory terms, in such a manner as to place the character of the accused in issue." Pacifico v. State, 642 So.2d at 1183. As in Pacifico, it is difficult to imagine any other purpose behind the line of argument in this case other than to encourage the jury to base its verdict on ill will and passion, rather than on the evidence and the law.
In Urbin v. State, 714 So.2d 411, 420 (Fla.1998), the Florida Supreme Court confronted improper closing statements by the prosecutor during the penalty phase of a capital murder trial. The improper comments included an invitation to the jury to recommend the death sentence to ensure that the defendant did not benefit from a future change in the law. Id. at 420 n. 10. The court in Urbin considered that comment to be an invitation to the jury to disregard the law. Id. at 420. In its analysis of the numerous improper statements during the state's closing argument in Urbin, the court stated that this comment was its "first and foremost concern." In that case the court held that the curative instruction given was inadequate and that a new penalty proceeding was justified. Id. at 419.
We find the prosecutor's remarks in this case invited the jury to make a finding of guilt for a reason other than evidence that demonstrated appellant committed the crime. This is error. In light of the disputed evidence concerning self defense, we cannot determine that the cumulative effect of the errors was harmless. We are, therefore, required to reverse and remand for a new trial.
ERVIN and VAN NORTWICK, JJ., CONCUR.
NOTES
[1] Appellant had previously been tried and convicted of second degree murder. Her first conviction was reversed by this court in Kelly v. State, 746 So.2d 1248 (Fla. 1st DCA 1999). The reversal in that case was based on the trial court's failure to give the appropriate jury instruction.
[2] The proposed cross examination was proffered by defense counsel.
[3] Defense counsel's objection that the prosecutor's statements tended to generate "hatred and ill will" towards the defendant and that the prosecutorial guarantee that the witness is not telling the truth adequately apprised the trial court of the grounds for the objection and motion for mistrial.