BENTON, J.,
concurring in part and dissenting in part.
In my view, the trial judge did an exemplary job in this case, and his rulings were correct in every respect in which they have been challenged. I concur in the judgment of the court to the extent it affirms the conviction, but I dissent insofar as the court today overturns the trial court’s decision under the restitution statute.
As a witness, the late Mr. Junior was properly subject to cross-examination, not only as to facts relevant to the allegations laid out in the information, but also as to facts relevant to interest, animus, or any other type of bias that might have led him to testify falsely against Mr. Childers. See § 90.608(2), Fla. Stat. (2002) (“Any party ... may attack the credibility of a witness by ... (2) Showing that the witness is biased.”). Entirely appropriately, Mr. Junior was also cross-examined at length about prior inconsistent statements he had made. See § 90.608(1), Fla. Stat. (2002) (“Any party ... may attack the credibility of a witness by ... (1) Introducing statements of the witness which are inconsistent with the witness’s present testimony.”).
Cross-examination is at once an important incentive for, and the adversary system’s great engine for testing for, truthful testimony. Eschewing the rack and screw, we count on cross-examination ... to ferret out the truth from any and all witnesses, and to gain a fuller understanding of the import of their testimony. See Sanders v. State, 707 So.2d 664, 667 (Fla.1998) (“[Ljimiting cross-examination in a manner that precludes relevant and important facts bearing on the trustworthiness of testimony constitutes error, especially when the cross-examination is directed at a witness for the prosecution.”). “Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.” Davis v. Alaska, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).
Bordelon v. State, 908 So.2d 543, 545-46 (Fla. 1st DCA 2005). But cross-examination must be relevant either- to the issues *117 being tried or to “the trustworthiness of testimony.” 707 So.2d at 667. Subsidiary procedural developments in the late Mr. Junior’s own case were irrelevant under either test. What was relevant and impeaching was the “big picture”: the pen-dency of proceedings that must have seemed to Mr. Junior to put his fate in the hands of the prosecutors; and the lengthy sentences his plea bargain, conditioned on testifying “truthfully” in the Childers trial, were meant to avoid. About these matters, the jurors were well and repeatedly informed.
The tangential result of a third prosecution, the filing of the much ballyhooed “ ‘Notice of Revocation of Terms of Plea Agreement,’ in Junior’s criminal case,” Majority Op. at 90, “and certain statements made by the State during the revocation hearing,” Separate Op., of Ch. J. Kahn at 106, were altogether irrelevant, not only in the main Childers case, but also as impeachment. Their proffer below was, moreover, disingenuous, if not actually withdrawn when the trial judge made clear that the rule of completeness would also have required admission of the trial court’s contemporaneous ruling on the whole matter, denying revocation of the plea bargain in the Junior case. It could not have been lost on defense counsel that informing the jury of an official determination that Mr. Junior had not breached his plea bargain but had testified truthfully in the third trial would have bolstered, not undermined, Mr. Junior’s credibility.
Both the Notice of Revocation of Terms of Plea Agreement and the complained of statements made by the State were, at bottom, expressions of opinions by those prosecuting the case. See R. Regulating Fla. Bar 4 — 3.4(e) (“A lawyer shall not: .... (e) in trial, ... state a personal opinion as to ... the credibility of a witness.”). It is unethical for a lawyer to assert a personal opinion regarding the credibility of a witness. See Ruiz v. State, 743 So.2d 1, 4 (Fla.1999) (“[An attorney] may not express his personal opinion on ... the credibility of witnesses.”) (quoting United States v. Garza, 608 F.2d 659, 663 (5th Cir.1979)); Kelly v. State, 842 So.2d 223, 227 (Fla. 1st DCA 2003); see also Lingle v. Dion, 776 So.2d 1073, 1078 (Fla. 4th DCA 2001) (“An attorney’s expression of his personal opinion as to the credibility of a witness ... is entirely improper.”). For this reason, too, the trial court did not err in excluding the Notice and attendant statements.
As for whether the government or a subdivision thereof is a “person,” § 1.01(3), Fla. Stat. (2002), within the meaning of the definition of “victim,” § 775.089(l)(c), Fla. Stat. (2002), in a penal statute, fidelity to the rule of lenity can lead only to the conclusion that the learned trial judge reached. See § 775.021(1), Fla. Stat. (2002) (requiring that “when the language [of a penal statute] is susceptible of differing constructions, it shall be construed most favorably to the accused”). Under accepted principles, Escambia County cannot be a “victim” within the meaning of section 775.089(l)(c), Florida Statutes (2002).
The majority opinion fails to acknowledge that the language it (selectively) quotes from section 960.295(2) can be fully explained by antecedent provisions that, while they render convicts financially liable to the state, do not authorize restitution awards under section 775.089(l)(c), Florida Statutes (2002). See § 960.293(2), Fla. Stat. (2002) (“Upon conviction, a convicted offender is liable to the state and its local subdivisions for damages and losses for incarceration costs and other correctional costs.”). The majority opinion mistakenly relies on section 960.295, Florida Statutes (2002) (“Civil restitution lien supplemental *118 to other forms of restitution available to lienholder.”), misapplies civil precedent in a penal context, and dishonors the rule of lenity. See Lewis v. State, 874 So.2d 18, 20 (Fla. 4th DCA 2004) (reversing the order of restitution “[bjecause the sheriffs office does not meet the statutory definition of ‘victim’ ”); Jones v. State, 846 So.2d 662, 662-63 (Fla. 2d DCA 2003) (same); Sheppard v. State, 753 So.2d 748, 748 (Fla. 2d DCA 2000) (“The Division of Insurance Fraud is not a “victim” in this case and cannot receive restitution.”); Sims v. State, 746 So.2d 546, 547 (Fla. 2d DCA 1999) (“The State does not qualify as a victim for payment of restitution pursuant to section 775.089(1)(c), Florida Statutes (1997).”).
Accordingly, I dissent from the judgment of the court insofar as it overrules the trial court as to restitution, but concur in the judgment otherwise.