# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2023-0089

_____

DAN IOAN BELC,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Calhoun County.
Christopher Patterson, Judge.

March 12, 2025

OSTERHAUS, C.J.

Dan Ioan Belc appeals his conviction for the first-degree murder of his wife and the aggravated assault of his brother-in-law with a firearm. Belc first argues that fundamental error occurred when the State improperly cross-examined him about some of his pre-trial statements suggesting that he could not receive a fair trial. Second, Belc contends that the trial court erred by denying his motion for a mistrial after the State asked questions about Belc's statement that he wished to plead guilty and avoid trial. Finally, Belc argues that the trial court erred in denying his motion to suppress. We affirm.

I.

Belc and his family were living in Germany in 2018, when due to some marital troubles, Belc's wife and children traveled to a

family home in Tallahassee. Belc soon followed. After Belc arrived, his wife and kids moved to Belc's in-laws' house in Blountstown. Learning that his wife planned to file for divorce, Belc traveled to Blountstown a number of times attempting to work out the issues. Belc also bought a handgun. Within days of picking up his new gun, Belc visited his wife again in Blountstown and they talked. Because Belc's wife was fearful of Belc, her brother monitored the discussion from across the room. At about midnight, when the discussion broke up, they walked Belc out to his car. Noticing that lights were on in a nearby barn and trailer on the property, the brother went to turn them off. At that point, Belc proceeded to hit and shoot his wife with the handgun that he had just purchased. When the victim's brother ran back to the couple, Belc pointed the gun at him and warned him not to come closer. Belc then put his wounded wife in the car and drove off. Belc's son testified that his father called him within hours of driving off and told him that he had shot his wife and that she was dead. The next day Belc drove to the sheriff's office and turned himself in to law enforcement. Belc stepped out of the car holding the handgun and there was blood all over him and in the car. A deputy then opened the trunk of Belc's car and discovered Belc's wife dead. She was found naked from the waist down in the trunk of Belc's car.

The State charged Belc with first-degree murder, aggravated assault with a firearm, kidnapping, and sexual assault. At the ensuing trial Belc testified that he was acting in the heat of passion when he shot and killed his wife. He claimed that right before he shot her, she had screamed at him and told him that two of their children were not his. The jury found Belc guilty of the first-degree murder of his wife and aggravated assault with a firearm against his brother-in-law. It found Belc not guilty of kidnapping and sexual assault. Belc was sentenced to life in prison without parole for the first-degree murder and to fifty-five months for the aggravated assault.

## II.

Belc makes three arguments on appeal for reversing his convictions.

## A.

2

Belc first argues that fundamental error occurred when, during his cross-examination, the State cited some of Belc's pro-se, pre-trial filings and asked if Belc believed he could receive a fair trial in Calhoun County. The State read several statements in which Belc contended that he could not receive a fair trial. In one such statement, for instance, Belc had written that "[a]s a foreigner and a doctor in a poor Calhoun County, middle of nowhere, good old boy town, you will get less justice than a black man in 1950s Mississippi." The defense did not object to these questions or move for a mistrial. But now, Belc argues that the questions were intended to inflame the jury and that a guilty verdict of first-degree murder could not have been obtained without them.

We review this argument for fundamental error because Belc did not preserve this argument at trial. "Generally, to preserve an issue for appeal based on improper argument, counsel is required to object and request a mistrial." *Cole v. State*, 866 So. 2d 761, 763 (Fla. 1st DCA 2004). Belc didn't object or move for a mistrial. Consequently, he must show a fundamental error. Fundamental error is defined "as one that goes to the essence of a fair and impartial trial, error so fundamentally unfair as to amount to a denial of due process." *Profit v. State*, 382 So. 3d 778, 780 (Fla. 1st DCA 2024) (quotation omitted).

Although we recognize the potential for prejudice in the State's questions, they do not rise to the level of fundamental error. When the defense fails to object to improper prosecutorial comments, reversal is only appropriate "where the comments are so prejudicial to the defendant that neither rebuke nor retraction would destroy their influence in attaining a fair trial." *Pacifico v. State*, 642 So. 2d 1178, 1184 (Fla. 1st DCA 1994). Here, we don't think the statements affected the trial. Indeed, everything suggests that the jury capably evaluated the evidence. It found Belc not guilty of two very serious charges involving the kidnapping and sexual battery of his wounded wife. But the premeditated murder evidence was particularly strong. Belc admitted to shooting and killing his wife. Belc had just purchased and begun carrying a gun for the first time less than a week before shooting his wife, after learning of her plan to divorce him. And in

3

the days leading up to the murder, testimony described Belc's behavior as scary and erratic. In sum, any error associated with Belc's trial-fairness concerns did not reach down into the validity of the trial or prompt guilty verdicts on the murder and assault charges such that they could not have been obtained without assistance of the alleged error. *Cf. Sheppard v. State*, 151 So. 3d 1154, 1165–68 (Fla. 2014) (holding that admission of the murder defendant's videotaped statement did not amount to fundamental error, even though some comments by law enforcement were improper statements of belief that the defendant was lying and that he was either the shooter or driver). We therefore affirm on this issue.

B.

Belc next argues that the State committed prejudicial error during cross-examination by asking follow-up questions after Belc testified about his pretrial wish to enter a guilty plea. Belc stated that he sought to enter a plea before trial, just not to first-degree murder. After the State asked some questions about this statement, the trial court stopped the questioning and Belc moved for a mistrial. The court denied the mistrial motion and issued a curative instruction. Belc argues that it was error for the court to deny his motion for mistrial.

"In reviewing a trial court's ruling on a motion for mistrial, [the appeals court] employs an abuse-of-discretion standard of review." *Lebron v. State*, 232 So. 3d 942, 951 (Fla. 2017). "A mistrial is appropriate only where the error is so prejudicial as to vitiate the entire trial." *Copeland v. State*, 247 So. 3d 645, 648 (Fla. 1st DCA 2018).

We see no error in the trial court's denial of the motion for mistrial. We recognize that under the Florida Evidence Code, "[e]vidence of . . . an offer to plead guilty or nolo contendere to the crime charged or any other crime is inadmissible in any civil or criminal proceeding." § 90.410, Fla. Stat.; *see also* Fla. R. Crim. P. 3.172(i) ("Except as otherwise provided in this rule, evidence of an offer . . . or of statements made in connection therewith, is not admissible in any civil or criminal proceeding against the person who made the plea or offer."). But here, Belc broached the plea

subject first during cross-examination. Belc said that he had tried to plead guilty "many times" to avoid trial. The prosecutor asked some follow-up questions. But ultimately, defense counsel objected, the trial court stopped the questioning, and the trial court gave a curative instruction to the jury.

Under these circumstances, even if the State should have refrained from asking about Belc's attempt to plead guilty, there was no prejudice or chance that the outcome of the trial would have been different. Indeed, Belc's trial strategy revolved around disclaiming innocence and admitting that he killed his wife but avoiding the first-degree murder charge. Consistent with this goal, the questions and answers on cross-examination about Belc's attempts to plead guilty merely highlighted the defense's professed trial strategy. We see no prejudice here. Furthermore, the trial court issued a curative instruction. And "[a]bsent a finding to the contrary, juries are presumed to follow the instructions given them." *Carter v. Brown & Williamson Tobacco Corp.*, 778 So. 2d 932, 942 (Fla. 2000).

C.

Lastly, Belc contests the denial of his motion to suppress statements he made to police, as well as evidence recovered because of these statements. A few weeks after his arrest Belc received a letter inviting him to participate in grand jury proceedings and to provide exculpatory evidence. Belc proceeded to meet with officers from the sheriff's office about this. After being read his *Miranda*[*] rights, Belc asked about an attorney. An officer responded that they couldn't immediately summon an attorney and would stop the interview if Belc wanted one present. Belc then agreed that the interview could continue and that he would let them know if he wished to stop:

Officer:  So if you're wanting an attorney present, we'll have to stop now, okay.

Belc: Okay.

---

[*] *Miranda v. Arizona*, 384 U.S. 436 (1966).

5

Officer: All right, so you want an attorney present with you?

Belc: I think we can go on and I can let you know along the way.

Officer: And like I said, you can stop at any time

Belc then talked with the officers and led them to a secondary crime scene where additional evidence was found.

"An appellate court uses a 'mixed standard' to review a trial court's ruling on a motion to suppress. The trial court's factual findings are reviewed for competent, substantial evidence, but its legal conclusions are reviewed de novo." *Tyson v. State*, 351 So. 3d 1184, 1186 (Fla. 1st DCA 2022) (internal citations omitted). "The Fifth Amendment right against self-incrimination requires an accused person be made aware that he is entitled to counsel during a custodial interrogation. . . . Whether an accused person has invoked his right to counsel hinges on whether the invocation is clear and unambiguous." *Rhodes v. State*, 219 So. 3d 251, 252 (Fla. 1st DCA 2017).

The trial court did not err in denying Belc's right-to-counsel-based motion to suppress. The transcript indicates that Belc never unequivocally invoked his right to counsel. At best he indicated a willingness to have an attorney present. But when given the choice of waiting for an attorney or immediately talking with investigators, Belc chose to continue talking. "[A] suspect is free to volunteer a statement to police on his or her own initiative at any time on any subject in the absence of counsel." *Traylor v. State*, 596 So. 2d 957, 966 (Fla. 1992).

III.

The judgment and sentence are AFFIRMED.

ROWE and RAY, JJ., concur.

6

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____


Jessica J. Yeary, Public Defender, and Kevin Paul Steiger, Assistant Public Defender, Tallahassee, for Appellant.

James Uthmeier, Attorney General, Daren L. Shippy, Assistant Attorney General, Tallahassee, for Appellee.