728 So.2d 814 (1999)
Frederick Bryan LAYMAN, III, Appellant,
v.
STATE of Florida, Appellee.
No. 97-3108.
District Court of Appeal of Florida, Fifth District.
March 12, 1999.
*815 Richard Lee Buckle of Richard Lee Buckle, P.A., Bradenton, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Rebecca Roark Wall, Assistant Attorney General, Daytona Beach, for Appellee.
PER CURIAM.
Frederick Bryan Layman III (defendant) appeals his judgment and sentence entered by the trial court after a jury found him guilty of committing a sexual battery.[1] We reverse because the trial court erred in denying the defendant's request to publish to the jury an audio recording of his post-arrest statement to police and limiting the defendant's trial testimony.
On August 6, 1996, C.M. filed a complaint with the Citrus County sheriff's office alleging that the defendant had sexually battered her. The defendant was charged with committing sexual battery, he pled not guilty, and a jury trial was held.
At trial, C.M. testified to events that occurred during the five-day time period between August 2 and August 6, 1996. She testified that she met the defendant at Bird's Lounge in Citrus County on Friday night, August 2. The next day he invited her to his house to listen to music. C.M. accepted the invitation and spent the night at the defendant's house. She stated that they engaged in consensual sexual intercourse on Saturday night and then went to the Chassahowitzka Lodge. C.M. spent Saturday night with the defendant at his home and again engaged in consensual sexual intercourse. C.M. went home on Sunday morning. Later that day the defendant invited C.M. to go boating with him, but she declined stating that she had to go to work early Monday morning. Later, however, C.M. agreed to go boating after the defendant told her that he needed someone to drive him around for the next couple of days and he would pay her what she would make at her job if she would do that for him.
C.M. testified that the defendant became angry and screamed at her during the boat ride because the boat motor stopped working. After the boat ride, C.M. accompanied the defendant back to his house and he showed her a gun. C.M. stated that the defendant then battered her and forced her to engage in oral and vaginal sex. She testified that she spent Sunday night at the defendant's house and tried to leave the house on Monday morning, but the defendant prevented her from leaving and again battered her and forced her to engage in oral and vaginal sex.
On Monday, C.M. drove the defendant in his car and accompanied him to an A.A. meeting, an auto parts store, a meeting with a friend in a parking lot, a restaurant, an eyeglass store, T-Bird's Lounge, the grocery store, C.M.'s mother's house, the home of a bouncer who works at T-Bird's, and then back to the defendant's house. On at least two occasions during the time C.M. was driving the defendant in his car, the defendant left C.M. in the car with the keys. C.M. explained that she did not attempt to escape because the defendant was armed and had threatened to kill her and her mother. C.M. testified that when she and the defendant returned to the defendant's house on Monday, he again forced her to engage in oral and vaginal sex. They then went to the Chassahowitzka Lodge where they danced, played darts, and the defendant played pool. After they left the Chassahowitzka Lodge, they went to two other bars, to a boat dock, and to the defendant's father's house. When they returned to the defendant's house, C.M. claimed that the defendant again battered her and forced her to engage in sexual acts. C.M. testified that she spent Monday night with the defendant, and on Tuesday morning he again forced her to engage in sexual acts and he videotaped one of their acts. C.M. *816 testified that she finally escaped Tuesday afternoon.
At the conclusion of its deliberations, the jury returned a verdict of guilty to the charge of sexual battery and the trial court sentenced the defendant to a term of 12 years' imprisonment followed by 10 years' probation.
The defendant argues that he is entitled to receive a new trial because the trial court erroneously denied his request to play to the jury certain portions of his audio-recorded statement that was made to a sheriff's agent after his arrest. At trial, relying on her memory, the sheriff's agent described the contents of the defendant's statement regarding C.M.'s use of medication during her visit, C.M.'s fear of the defendant, and whether C.M. consented to video recording their sexual acts. The agent paraphrased portions of the defendant's testimony relying on her recollection and impressions. Defense counsel objected, arguing that the entire audio-recording of the defendant's statement should be played to the jury. The trial court denied his request, stating that the defendant could introduce the recording during his case. However, when the defendant later attempted to introduce the recording during his case-in-chief, the trial court again denied the request on grounds that it "would be improper bolstering of a witness' testimony." This ruling was erroneous.
Section 90.108(1), Florida Statutes (1997), provides that when a party introduces a portion of a recorded statement, "an adverse party may require him or her at that time to introduce any other part or any other writing or recorded statement that in fairness ought to be considered contemporaneously." This rule applies equally to a witness' recollection of a portion of a statement as it does to a portion of a statement admitted verbatim. See Long v. State, 610 So.2d 1276, 1282 (Fla.1992).
We recognize that this rule of completeness is not absolute; a trial court may exercise its discretion to exclude irrelevant portions of a recorded statement. See id. However, here, the trial court did not state any reason for disallowing the publication of the audio-recording during the defendant's cross-examination of the sheriff's agent, and the record does not otherwise demonstrate that the trial court exercised its discretion. At least some portions of the recording were relevant since they were offered by the state through the agent's testimony as evidence of the defendant's guilt. Accordingly, under section 90.108(1), it was error for the trial court to prevent the defendant from presenting relevant portions of the recording during his case-in-chief. See Larzelere v. State, 676 So.2d 394, 401-02 (Fla.), cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). Furthermore, since there is a reasonable possibility that the trial court's error contributed to the guilty verdict rendered in this case, we must reverse the defendant's judgment and sentence for sexual battery and remand this matter for a new trial. See State v. DiGuilio, 491 So.2d 1129, 1135 (Fla. 1986).
Although we have already decided that the defendant is entitled to receive a new trial, we will address the second claim of error raised by the defendant so that the same error is not repeated on retrial. The defendant testified at trial and admitted that he engaged in sexual acts with C.M. The trial court prohibited the defendant from testifying about what C.M. told him during the entire time she was with him. The trial court interrupted the defendant's testimony and instructed him not to repeat any statements made by C.M.[2] The defendant maintains *817 that the trial court erred in refusing to allow him to testify regarding C.M.'s statements because such statements were admissible to prove her state of mind. We agree.
A defendant accused of sexual battery "should be permitted to testify as to the victim's statements immediately prior to, and at the time of, the sexual encounter. Such statements are relevant to, and are admissible as, evidence of the victim's then existing state of mind regarding the question of ... consent." Pacifico v. State, 642 So.2d 1178, 1186 (Fla. 1st DCA 1994). The court in Pacifico reasoned that the victim's statements were admissible under the hearsay exception set forth in section 90.803(3), Florida Statutes, as evidence of the victim's then-existing mental or emotional condition. Id.
The state argues that this issue was not properly preserved for appeal because the defendant failed to make timely objections to the court's rulings. However, we are not persuaded by the state's argument that this issue was waived because defense counsel did not say "I object" to the court's rulings. The contemporaneous objection rule is satisfied under the facts of this case because the trial court clearly understood the defendant's position and further debate would have been futile. See Spurlock v. State, 420 So.2d 875, 876 (Fla.1982).
In closing, we note that the Florida Code of Judicial Conduct mandates that a judge shall act in such a way "that promotes public confidence in the integrity and impartiality of the judiciary" and carry out judicial responsibility without bias or prejudice. See Fla.Code Jud. Conduct, Canons 2 A & 3 B(5), (9). While we do not hold that a judge may never ask a question during a jury trial, we caution that to do so is risky because it may give the jury the impression that the judge has an interest in the outcome. "Repeated interjections without objection can recast the judicial role from impartial adjudicator to an apparent advocate for the party foreswearing objection." Brown v. State, 678 So.2d 910, 913 (Fla. 4th DCA 1996).
Judgment and sentence REVERSED and cause REMANDED.
W. SHARP, HARRIS, and ANTOON, JJ., concur.
NOTES
[1] § 794.011(4), Fla. Stat. (1995).
[2] THE COURT: He's sitting there, just hearsay evidence like crazy, and there is no objection. He gave testimony to what she said. STATE: But this is what he does on tape, too. Your Honor. He just rambles and rambles. THE COURT: If its not hearsay, your questions are leading, so no leading questions on direct, no hearsay testimony.

* * *
DEFENDANT: I told her
THE COURT: Wait, waitwait, wait. The rules of evidence require that you testify not as to what somebody else said to you, but just as to what either of you said or you observed, okay, Mr. Layman. That applies to everybody, and I've tried to keep it applying to everybody all day.
* * *
DEFENDANT: Are you saying that I can't say what she said to me?
THE COURT: Right. Right.
DEFENDANT: It's hard to tell the story without telling 
THE COURT: I understand. I don't make up the rules, I just try to enforce them.
DEFENDANT: If I do it again, I'm sorry, because the only way I know how to tell the story is what I said and you said, and you know.
* * *
DEFENDANT: And she asked me about kids, and she had asked meam I doing it again?
THE COURT: Well,
DEFENSE COUNSEL: He can't even say she asked?
THE COURT: No, no, not that, no. I'm trying to avoid this taking forever. So when [the prosecutor] asks you a question, you don't have toif he wants you to expound on it, he'll ask you a follow-up question, okay. So just try to be responsive to the questions.
DEFENDANT: I'm just trying to get my story out.
THE COURT: I understand, Mr. Layman.
DEFENDANT: It's my only chance, you know.
* * *
DEFENDANT: Andcan I even say what she asked me?"
THE COURT: No, sir. You really can't. But you did good though, you just said she asked about it, which is fine.
* * *
DEFENDANT: I could tell by the look on [my attorney's] face that I was doing something wrong.
THE COURT: That's all right. Don't worry about his looks, just worry about my looks.
* * *
DEFENSE COUNSEL: Did you get any indication from [C.M.] during this entire weekend, you know, that she wanted to leave and go back to her house?
DEFENDANT: The only indication I ever got about that was she told me that she had to take her mother
THE COURT: Wait, wait, wait, wait, wait, ... there we go. It's the `she told me', see.
DEFENDANT: I'm sorry.