994 So.2d 1258 (2008)
Antonio OCASIO, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-3645.
District Court of Appeal of Florida, Fourth District.
December 10, 2008.
*1260 Carey Haughwout, Public Defender, and Gary Lee Caldwell, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Laura Fisher Zibura, Assistant Attorney General, West Palm Beach, for appellee.

ON MOTION FOR REHEARING
WARNER, J.
We deny appellant's motion for rehearing, but withdraw our previous opinion and substitute the following in its place.
Appellant challenges his convictions for battery of his estranged wife and possession of a firearm by a convicted felon. He claims that the trial court erred in denying him the opportunity to impeach his daughter, whom he called as a witness; by refusing to admit testimony of his former attorney as to the victim's prior false allegations against him; and by erroneously charging the jury. We hold that the trial court did not abuse its discretion in refusing to permit impeachment where the daughter's testimony was not inconsistent with prior statements and involved a collateral matter; the issue as to the former attorney's testimony was not preserved; and the charge to the jury was not fundamentally erroneous. We do, however, agree with appellant's challenge to his sentence that his two convictions of battery violate double jeopardy because they arose out of the same criminal episode.
Appellant Antonio Ocasio was charged by information with armed sexual battery, aggravated battery, and possession of a firearm by a convicted felon. The charges arose from a dispute between appellant and his estranged wife, Annette Ocasio. The parties have a minor daughter, age eleven. Annette is a detention deputy with the Broward Sheriff's Office.
On the day of the incident, Annette wanted to see her daughter who was with Antonio. She went to his apartment looking for the child. When she arrived, Antonio let her in but hit her with a gun on her temple, because he was upset that she had been seeing her boyfriend. He threw her to the ground, and her face hit the floor. He told her he would kill her and had the gun behind her head. With her face to the floor, he took his hand and put his fingers inside of her vagina. He then flipped her over and raised her dress and started biting her breast. She stopped resisting, and he stopped holding her down, got up, and told her to get out, which she did, and she ran to the neighbor's house.
Antonio's version of the incident differed sharply. Antonio explained that Annette had falsely accused him in 1996 of aggravated assault by pointing a gun at her and threatening to kill her. Annette later recanted her story and told the court that she did not know whether there was a gun involved. Nevertheless, appellant pled to three years' probation so that Annette would not lose her job as a correctional officer.
In the current incident he testified that Annette was the aggressor. She first attacked him by pulling a chain off his neck and ripping his shirt. He pushed her away, and she fell. She said to him that she would shoot him and started to grab for her gun. He jumped on her and put a choke hold on her to avoid being shot. They struggled, and he admitted that he hit her hard twice in the temple area with his hand. The ring on his hand hit her *1261 temple. That caused her to release the gun. At that point, their child came into the room, and both of them froze. When the child left the room, Annette again tried to reach for the gun. Antonio again got on top of her and told her never to point a gun at someone. Then he got up and told her she was not worth this and to get out of his house. Annette ran out of the house to the neighbor. Antonio and the child left in his truck to go to the house of Aaron Blue, a friend and sheriff's deputy.
Because he was a convicted felon, Antonio could not have a gun in his possession. He threw the gun away while he drove to Blue's house. After he arrived, he told Blue about the gun, and they then retrieved it. Later Antonio turned himself in to the police. Blue testified and corroborated Antonio's testimony.
The defense attempted to call an attorney who represented Antonio in the 1996 incident to testify about the case and Annette's false accusations. The prosecutor objected on the grounds of hearsay. The trial court refused to admit the evidence as hearsay.
The defense also called the parties' child who was eleven at the time and was present in the apartment when the incident occurred. She testified that she did not see a gun in the apartment, although on cross-examination she admitted to seeing a gun when she and her father drove away. Twice the defense asked her whether she had ever seen her mother with a gun, and the child first answered that she had not seen her with one and then said she did not remember. When asked a third time, the child said she had not seen her mother with a gun. Again, defense counsel asked if she had ever seen her mother with a gun, and the trial court refused to permit further answer, over defense counsel's contention that he wanted to impeach the child with her statement on deposition that "that her mom carries a gun for work on her belt, she doesn't know what kind, she thinks it's a different gun from the one in this case."
Blue and Yvonne Levy, who was a hair stylist at appellant's salon, both testified that in the past they had seen Annette wearing a gun in a holster on her belt. Blue could not say whether the gun from the bushes was the same gun he had seen Annette wear. However, during his deposition he stated that the gun from the bushes was different from the one he had seen Annette wear.
The trial court instructed the jury on the justifiable use of non-deadly force. In doing so, it stated: "The use of force not likely to cause death or great bodily harm is not justifiable if you find that Antonio Ocasio was attempting to commit, committing, or escaping after the commission of Armed Sexual Battery and/or Aggravated Battery." The jury convicted Antonio of two counts of battery, as lesser included offenses of the charges of armed sexual battery and aggravated battery, and one count of possession of a firearm by a convicted felon. The court sentenced him to time served for the battery convictions, and five years' imprisonment followed by two years' probation for the possession of a firearm conviction. From these convictions and sentences, he appeals.
As his first issue, he claims that the court erred in refusing to permit him to impeach the child with her deposition testimony. An appellate court reviews decisions on the admissibility of evidence for abuse of discretion as limited by the rules of evidence. Nardone v. State, 798 So.2d 870, 874 (Fla. 4th DCA 2001).
Section 90.608, Florida Statutes, permits "[a]ny party, including the party calling the witness," to attack the credibility of a witness by "[i]ntroducing statements of the witness which are inconsistent *1262 with the witness's present testimony." § 90.608(1), Fla. Stat. The right to impeach one's own witness is not absolute. As the supreme court explained in Morton v. State, 689 So.2d 259, 264 (Fla.1997), receded from on other grounds by Rodriguez v. State, 753 So.2d 29 (Fla.2000), where a witness gives both favorable and unfavorable testimony, impeachment should usually be permitted with a prior inconsistent statement. However, the court admonished, "the statement should be truly inconsistent, and caution should be exercised in permitting impeachment of a witness who has given favorable testimony but simply fails to recall every detail unless the witness appears to be fabricating." Id. In addressing these issues, a trial judge is afforded broad discretion in determining whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice or confusion.
The trial court did not abuse its discretion in refusing to permit impeachment of the daughter. The statement was not truly inconsistent in that the daughter testified at trial that she did not know or could not remember seeing a gun on her mother at any time, while at her deposition she said her mother carried a gun for work but it was a different type of gun than the one involved in this incident. The two statements are not truly inconsistent, and the child's testimony appears to fall into the category of a witness who simply cannot remember every detail rather than a witness who appears to be fabricating. Further, while the issue of whether Annette had a gun with her during the incident was a material issue, the daughter testified that she did not see a gun during the incident. Therefore, whether she saw her mother carry a different type of gun with her uniform at other times is collateral to the main issue of the case. The trial court determined that the statement was collateral, and we have no reason to reverse its conclusion.
The trial court refused to permit appellant's former attorney to testify about Annette's prior false allegations which led to appellant's 1996 felony conviction. At trial he claimed that it tended to prove the character of the victim to make false allegations, while on appeal he claims that it was admissible as evidence of bias. At trial he cited section 90.404(1)(b) of the Florida Evidence Code which permits admission of evidence of a pertinent trait of the character of a victim. The court considered it hearsay, because the attorney would testify to what Annette said in the prior proceeding. It was being offered for the truth of the matter. No other authority for its admission was cited to the court. The court noted that appellant might be able to offer the attorney's testimony as impeachment of Annette, and the court would have permitted Annette to be recalled to the stand for the purpose of interrogating her on the prior accusation. However, the defense elected not to recall her to the stand. On appeal appellant claims that the attorney's testimony would have been evidence of bias, admissible under section 90.608(2). This issue was not preserved for appeal because the grounds for reversal argued here are not the same as those raised in the trial court for admission of the evidence. See Johnson v. State, 969 So.2d 938, 954 (Fla.2007).
Finally, appellant argues that the court committed fundamental error in instructing the jury that appellant could not use non-deadly force if he was engaged in the commission of the offenses charged, because this instruction effectively negated his claim of self-defense. This self-defense instruction derives from section 776.041(1), and we explained in Rich v. State, 858 So.2d 1210, 1210 (Fla. 4th DCA 2003), that this instruction "was applicable only in circumstances *1263 where the person claiming self-defense is engaged in another independent forcible felony at the time. Giving this instruction where the only charge against the defendant is the aggravated battery, which also was the act that the defendant claimed was self-defense, would improperly negate the self-defense claim." (emphasis supplied). See also Martinez v. State, 981 So.2d 449, 452 (Fla.2008). Where the defendant is charged with at least two criminal acts, the act for which the defendant is claiming self-defense and a separate forcible felony, the statute applies and the instruction is proper. See Shepard v. Crosby, 916 So.2d 861 (Fla. 4th DCA 2005).
Appellant was charged with two criminal acts, namely armed sexual battery and aggravated battery with a deadly weapon. Clearly, the armed sexual battery was not the act which appellant claimed he committed in self-defense. He denied that it occurred. Even the charge of aggravated battery with a deadly weapon is not the same act that appellant claims he committed in self-defense. The state charged appellant with aggravated battery for the initial act committed against Annette. She testified that appellant hit her with a gun upon entering the house. On the other hand, appellant testified that he pushed her to the floor after she attacked him. Once on the floor, he hit her with his ring hand when she pulled a gun on him. Thus, he is claiming that the aggravated battery with a deadly weapon also did not occur. What he hit her with in self-defense was his ring.
In Martinez the supreme court reiterated that a self-defense plea acts as a confession and avoidance of the act charged by the state:
This Court has explained the nature of a self-defense claim as follows:
Self-defense is a plea in the nature of a confession and avoidance. In such cases the defendant confesses doing the act charged, but seeks to justify that act upon the claim that it was necessary to commit the act to save himself from death or great bodily harm.

Hopson v. State, 127 Fla. 243, 168 So. 810, 811 (1936) (emphasis supplied). Thus, when a defendant asserts a claim of self-defense, he admits the commission of the criminal act with which he was charged but contends that the act was justifiable.
981 So.2d at 452-53. Here appellant did not admit the commission of aggravated battery with a deadly weapon. He claimed it did not occur. He admitted a battery of the victim in self-defense of her attempt to shoot him, but that tended to prove that the crime of aggravated battery with a weapon charged by the state did not occur. The justifiable use of non-deadly force instruction may have been applicable to his requested lesser included charge of battery, but it was not applicable to the crime charged. For these reasons, we cannot conclude that it is fundamental error in this case, or error at all, because his claim of self-defense did not apply to the crime charged.
With respect to appellant's sentence, we conclude that the two battery convictions cannot stand as they arose from the same incident without temporal break. Judd v. State, 839 So.2d 830, 831 (Fla. 4th DCA 2003) (where the state charged defendant with various offenses including armed kidnapping, armed sexual battery, and armed burglary, and the court found him guilty of three counts of battery as lesser included offenses, only one of the convictions could stand where the evidence at trial showed that the "convictions were based on offenses that involved the same victim, occurred at the victim's home, and were committed as part of one continuous *1264 criminal episode"). There was no evidence that there was a temporal break between any of the incidents in this case so that a new criminal intent could be formed.
Accordingly, we affirm in part, reverse in part, and remand with directions to vacate one of the battery convictions and sentences.
STEVENSON and MAY, JJ., concur.