DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JUSTIN J. HAWN,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D19-647

[July 22, 2020]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Indian River County; Cynthia L. Cox, Judge; L.T. Case No. 31-2017-CF-001117A.

Michael Ufferman of the Michael Ufferman Law Firm, P.A., Tallahassee, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Paul Patti, III, Assistant Attorney General, West Palm Beach, for appellee.

CONNER, J.

Justin J. Hawn ("Defendant") appeals his conviction and sentence for lewd and lascivious molestation, raising four issues. We find merit in Defendant's arguments asserting the trial court erred by denying impeachment evidence of prior inconsistent statements. The impeachment evidence was in the form of "negative impeachment," where the child's prior statement to the first person to whom she reported the alleged crime omitted significant facts as compared to her testimony at trial. Because the error was not harmless, we reverse and remand for a new trial. Our reversal makes the other issues raised on appeal moot.

*Background*

Following a jury trial, Defendant was convicted of one count of lewd and lascivious molestation by an offender over eighteen years of age upon a victim under twelve years of age. A.W. ("the Victim") was ten years old at the time of trial.

Defendant and the Victim's mother were in a romantic relationship. Four months after the relationship began, Defendant moved in and lived with the Victim and her mother for approximately one year. Upon separating from the mother, Defendant moved away.

The Victim testified that Defendant touched her many times on the back of her legs, butt, and private area. She also said he touched her under her shirt on her stomach but she moved him away before he could go up higher. She explained that after Defendant moved out, she eventually told her grandmother about all the places Defendant had been touching her. During cross-examination, defense counsel asked the Victim whether, when she first told her grandmother, she said that Defendant touched her only on her legs and butt but nowhere else. The Victim did not remember telling her grandmother that he touched her only on her legs and butt.

During direct examination, the grandmother testified "there had been problems" after Defendant left the Victim's mother. She explained that the child was irritable, which prompted her to ask specifically if it was related to her mother's breakup with Defendant. The State then asked: "Did [the Victim] then go on and tell you that, the allegations that we're here for today?" The grandmother responded, "[s]he did," without giving any details of what the Victim disclosed, presumably because the State was avoiding a hearsay objection.

During the grandmother's cross-examination, defense counsel sought to have the grandmother acknowledge that the Victim told her that Defendant "only touched her thighs and her butt and that was it." The State asserted a hearsay objection, initially contending the defense was trying to use the Victim's statement to her grandmother as substantive evidence. During the bench conference and after a verbal proffer, it became clear Defendant was seeking to impeach the Victim by showing that she omitted significant details of the alleged crime when disclosing it to her grandmother. The State shifted its objection to contending that the Victim's statement to her grandmother was not inconsistent with her testimony at trial. The trial court agreed with the State and denied the request to present impeachment evidence.

During the detective's testimony, the State introduced a controlled phone call the mother had with Defendant. In the controlled call, Defendant admitted to touching the Victim's butt but maintained it was an accident. He also admitted to frequently rubbing the Victim's legs when they were watching television and rubbing her stomach under her shirt. However, he maintained that he never touched her private area or breasts.

2

Defendant's defense was that the Victim's mother prompted the Victim to fabricate the allegations in revenge for ending the relationship. Defendant called his mother, brother, and aunt as witnesses. His mother and brother testified that based on their observations, the Victim adored Defendant and did not seem uncomfortable around him. All three witnesses testified that the Victim's mother was very upset with Defendant when he ended the relationship.

Defendant testified that he never touched the Victim's crotch or breasts, and his touches were never in a sexual manner. The only time he touched her butt was when he was carrying her in his arms, which was rare. On cross-examination, he admitted he has rubbed her stomach, usually over her shirt and only touched her skin at or slightly below her belly button if her shirt moved and exposed her skin but denied ever lifting her shirt to touch her. He did admit that one time the Victim told him not to touch her butt, which he denied touching and insisted it was just her hip.

Following a guilty verdict, Defendant was sentenced to a mandatory minimum prison sentence, followed by life sexual offender probation. Defendant then gave notice of appeal.

*Appellate Analysis*

"An appellate court reviews decisions on the admissibility of evidence for abuse of discretion as limited by the rules of evidence." *Ocasio v. State*, 994 So. 2d 1258, 1261 (Fla. 4th DCA 2008) (citing *Nardone v. State*, 798 So. 2d 870, 874 (Fla. 4th DCA 2001)).

Defendant argues the trial court abused its discretion in prohibiting him from impeaching the Victim's credibility with a prior inconsistent statement to her grandmother when she initially disclosed the alleged crime. The inconsistency was demonstrated by the Victim telling her grandmother that Defendant touched only her legs and butt but nothing more. He contends the error was not harmless. We agree.

"[I]ntroduction of a prior statement that is inconsistent with a witness's present testimony is . . . one of the main ways to attack the credibility of a witness." *Pearce v. State*, 880 So. 2d 561, 569 (Fla. 2004) (citations omitted). Section 90.608(1), Florida Statutes (2018), allows a party to attack the credibility of a witness by "introducing statements of the witness which are inconsistent with the witness's present testimony." § 90.608(1),

Fla. Stat. (2018); *see also Davis v. State*, 756 So. 2d 205, 207 (Fla. 4th DCA 2000).

> The theory of admissibility is not that the prior statement is true and the in-court testimony is false, but that because the witness has not told the truth in one of the statements, the jury should disbelieve both statements. To be inconsistent, a prior statement must either directly contradict or be materially different from the expected testimony at trial. The inconsistency must involve a material, significant fact rather than mere details. "Nit-picking" is not permitted under the guise of prior inconsistent statements.

*Pearce*, 880 So. 2d at 569 (internal citations omitted).

A foundation must be laid before impeaching with an inconsistent statement by calling to the witness's attention the time, place, and person to whom the statement was allegedly made. § 90.614(2), Fla. Stat. (2018); *Pearce*, 880 So. 2d. at 569–70. "If [the] witness denies making or does not distinctly admit making the prior inconsistent statement, extrinsic evidence of such statement is admissible." § 90.614(2), Fla. Stat. "If the witness cannot recall making the prior inconsistent statement, the fact that the statement was made may be proved by another witness." *Marshall v. State*, 68 So. 3d 374, 375 (Fla. 5th DCA 2011). Furthermore, "an omission in a previous out-of-court statement about which the witness testifies at trial" can be considered an inconsistent statement for impeachment purposes, if the omission is a "material, significant fact rather than mere details and would naturally have been mentioned." *Varas v. State*, 815 So. 2d 637, 640 (Fla. 3d DCA 2001); *see also State v. Smith*, 573 So. 2d 306, 313 (Fla. 1990) ("[W]itnesses [may] be impeached by [a] previous failure to state a fact in circumstances in which that fact naturally would have been asserted." (quoting *Jenkins v. Anderson*, 447 U.S. 231, 239 (1980))). Such an omission is referred to as "negative impeachment." *Varas*, 815 So. 2d at 640.

In the instant case, Defendant argues that the fact that the Victim failed to tell her grandmother that he touched her private area is a material and significant fact that is inconsistent with the Victim's testimony at trial. Defendant further argues the fact that Defendant touched her private area in addition to her legs is a factual detail, which if true, is likely one the Victim would have disclosed to her grandmother. The State argues the Victim's trial testimony is not inconsistent with the statement she made to her grandmother. The State characterizes the statement to the Victim's grandmother as simply missing a particular detail, citing *Pearce* as

4

support. *Pearce*, 880 So. 2d at 569 ("'Nit-picking' is not permitted under the guise of prior inconsistent statements.").

In support for his argument, Defendant relies on *Marshall,* presumably because, there, the State's case was based entirely on the victim's eyewitness testimony of the identification of the defendant as the driver in a drive-by shooting. *Marshall,* 68 So. 3d at 375. However, we do not find *Marshall* particularly helpful because there, the eyewitness made an affirmative pretrial statement that was totally contradictory to her trial testimony. *Id.* Here, we confront an omitted pretrial statement.

Instead, we find our prior decisions in *Davis v. State*, 756 So. 2d 205 (Fla. 4th DCA 2000), *Sanjurjo v. State*, 736 So. 2d 1263 (Fla. 4th DCA 1999), and *McBean v. State*, 688 So. 2d 383 (Fla. 4th DCA 1997), to be more instructive. In each case, the trial court sustained the State's objection to "negative impeachment," and we reversed and remanded for a new trial because the defense was precluded from proper cross-examination and impeachment evidence where the victim or witness gave testimony at trial that was omitted from prior statements to law enforcement. *See Davis*, 756 So. 2d at 208 ("[The victim's] trial contentions that [the defendant] shoved her and waved a gun around are the type of facts that 'naturally would have been asserted' when police asked her what happened."); *Sanjurjo*, 736 So. 2d at 1264 (victim's prior statement did not contain a fact which, under the circumstances, "naturally would have been asserted"); *McBean*, 688 So. 2d at 385 ("[Impeachment] testimony of [the witness] was material and was information one would expect [the witness] to have reported to the police at the outset.").

We reject the State's argument that there was no inconsistency between the Victim's testimony at trial and the description of Defendant's touching that she gave her grandmother. The omission goes beyond nit-picking and is a significant, material detail and one the Victim naturally would have mentioned to her grandmother when disclosing the alleged abuse. Importantly, the only eyewitnesses to the alleged crime were the Victim and Defendant. There was no physical evidence or admissions to corroborate the Victim's account as Defendant consistently denied any sexual touching.

We also reject the State's argument that any error was harmless. The harmless error test "places the burden on the State, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986). Although Defendant was

able to call into question the Victim's credibility during trial and in closing argument, the Victim was the only witness to Defendant's alleged actions. Therefore, "the jury's assessment of her credibility was critical." *Davis*, 756 So. 2d at 208; *see also Docekal v. State*, 929 So. 2d 1139, 1143 (Fla. 5th DCA 2006) (holding that it was not harmless error when trial court erred in limiting the defendant's cross-examination of the victim as the victim's credibility was critically important in a he-said, she-said sexual battery case). We again point out that Defendant's theory of the defense was that the mother coached the Victim to fabricate these allegations because she was upset at Defendant for ending their relationship. Therefore, it cannot be said that prohibiting the impeachment was harmless.[1]

Having determined the trial court erred in denying negative impeachment evidence, we reverse Defendant's conviction and sentence and remand for a new trial.

*Reversed and remanded for a new trial.*

WARNER and MAY, JJ., concur.

*    *    *

***Not final until disposition of timely filed motion for rehearing.***

---

[1] We express no opinion as to whether the negative impeachment evidence opens the door to other evidence.